UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BLACK ELK ENERGY OFFSHORE | § | CASE NO. 15-34287 (MI) |
| OPERATIONS, LLC | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| RICHARD SCHMIDT, LITIGATION TRUSTEE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADVERSARY NO. 4:19-AP-03370 |
| | § | |
| BARBARA NORDLICHT AS REPRESENTATIVE OF | § | |
| THE ESTATE OF JULES NORDLICHT, BARBARA | § | |
| NORDLICHT AS TRUSTEE OF THE JULES AND | § | |
| BARBARA NORDLICHT FOUNDATION INC., | § | |
| SHLOMO AND TAMAR RECHNITZ, MORRIS | § | |
| FUCHS, THE SHMUEL FUCHS FOUNDATION INC., | § | |
| FCBA TRUST, SOL WERDIGER, AARON | § | |
| PARNES, MN CONSULTING NY LLC, GREAT | § | |
| LEGACY OF NEW YORK CORP. PENSION PLAN, | § | |
| ORA GICHTIN, DAVID GICHTIN, ABRAHAM | § | |
| GROSSMAN, PLATINUM FI GROUP, LLC, | § | |
| SHELDON PERL, PERL EQUITY HOLDINGS, LLC, | § | |
| GOLDA WILK, AND THE BENEFICIAL OWNERS | § | |
| OF ACCOUNTS HELD IN THE NAME NYROY. | § | |
| | § | |
| DEFENDANTS. | § | |

**TRUSTEE'S OPPOSITION TO THE SECOND MOTION TO DISMISS
OF SHLOMO AND TAMAR RECHNITZ (DKT. NO. 102)**

919571.6

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

SUMMARY OF ARGUMENT ......................................................................................1

FACTUAL BACKGROUND .........................................................................................1

ARGUMENT ..................................................................................................................5

1.      The Rechnitz Defendants waived their Ponzi scheme "innocent investor," *in pari delicto*, and commingling arguments by not raising them previously. .............................5

2.      The Rechnitz Defendants are not "innocent investors" entitled to retain their principal investment. .................................................................................................6

      2.1     The Rechnitz Defendants bear the burden of pleading and proving their affirmative defenses under the Bankruptcy Code and TUFTA, which they have not done. .............................................................................................6

      2.2     The Trustee's First Amended Complaint does not establish the Rechnitz Defendants' affirmative defenses as a matter of law. ..............................9

3.      The doctrine of *in pari delicto* does not bar the Trustee's fraudulent transfer claims. ....................................................................................................................10

      3.1     The doctrine of *in pari delicto* does not apply to fraudulent transfer claims.........10

      3.2     Even if the doctrine of in pari delicto applied, the Court should still deny the motion to dismiss because it is an unpled affirmative defense and, if pled, would require discovery and an evidentiary hearing and consideration of public policy issues. ....................................................13

4.      The First Amended Complaint adequately pleads tracing. ................................16

      4.1     Rule 8 notice pleading applies to tracing. ...............................................16

      4.2     The Trustee must only plead the tracing pathways and time frame. ....................17

      4.3     The FAC sufficiently pleads the pathways and timing through which the Black Elk funds were transferred to the Rechnitz Defendants. ..............................18

      4.4     The alleged commingling does not defeat tracing. ................................20

CONCLUSION..............................................................................................................24

CERTIFICATE OF SERVICE .....................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.T.N. Indus., Inc. v. Gross*,
2016 WL 362309 (S.D. Tex. Jan. 29, 2016) ............................................................................6

*Am. Pegasus SPC v. Clear Skies Holding Co., LLC*,
2015 WL 10891937 (N.D. Ga. Sept. 22, 2015) ....................................................................12

*Christus Health v. Amisys, LLC*,
2005 WL 2388258 (S.D. Tex. Sept. 26, 2005) ......................................................................16

*Donell v. Kowell*,
533 F.3d 762 (9th Cir. 2008) ...................................................................................................7

*First Federal of Michigan v. Barrow*,
878 F.2d 912 (6th Cir. 1989) .................................................................................................23

*Fuentes v. Alecio*,
2006 WL 3813780 (S.D. Tex. Dec. 26, 2006) .......................................................................13

*GE Capital Commercial, Inc. v. Worthington Nat'l Bank*,
754 F.3d 297 (5th Cir. 2014) .................................................................................................10

*In re Advent Management Corp.*,
178 B.R. 480 (9th Cir 1995) ..................................................................................................23

*In re Bernard L. Madoff Inv. Sec. LLC*,
2012 WL 892514 (Bankr. S.D.N.Y. March 14, 2012).........................................17, 20, 21, 24

*In re Bernard L. Madoff Inv. Sec. LLC*,
445 B.R. 206 (Bankr. S.D.N.Y. 2011) ...................................................................................17

*In re Bernard L. Madoff Inv. Sec. LLC*,
548 B.R. 13 (Bankr. S.D.N.Y. 2016) .....................................................................................16

*In re Black Elk Energy Offshore Ops., LLC*,
2019 WL 3889761, at *7 (Bankr. S.D. Tex. Aug. 16, 2019)...................................................8

*In re D.I.T., Inc.*,
575 B.R. 534 (Bankr. S.D. Fla. 2017) ...................................................................................12

*In re Davis*,
785 F.2d 926 (11th Cir.1986) ................................................................................................12

*In re Fin. Res. Mortg., Inc.*,
   454 B.R. 6 (Bankr. D.N.H. 2011) ........................................................................................11

*In re Fordu*,
   209 B.R. 854 (B.A.P. 6th Cir. 1997), *aff'd*, 201 F.3d 693 (6th Cir. 1999) ..............................12

*In re FWLL, Inc.*,
   2018 WL 1684308 (Bankr. W.D. Tex. April 5, 2018) ...............................................................8

*In re Greater Se. Cmty. Hosp. Corp.*,
   333 B.R. 506 (Bankr. D.D.C. 2005) .....................................................................................11

*In re Hanover Corp.*,
   310 F.3d 796 (5th Cir. 2002) ...............................................................................................7

*In re Hawaiian Telcom Communications, Inc.*,
   483 B.R. 217 (Bankr. D. Haw. 2012) ...................................................................................11

*In re Int'l Admin. Servs., Inc.*,
   408 F.3d 689 (11th Cir. 2005) ............................................................................................20

*In re Juliet*,
   2013 WL 5674398 (Bankr. S.D. Oct. 17, 2013) ...........................................................8, 9, 10

*In re Kennedy & Cohen, Inc.*,
   612 F.2d 963 (5th Cir. 1980) ..............................................................................................23

*In re M & L Bus. Mach. Co., Inc.*,
   198 B.R. 800 (D. Colo. 1996) ...............................................................................................8

*In re Maui Indus. Loan & Fin. Co.*,
   454 B.R. 133 (Bankr. D. Haw. 2011) ...................................................................................11

*In re Maui Indus. Loan & Finan. Co., Inc.*,
   2013 WL 2897792 (D. Hawaii June 13, 2013) ........................................................................7

*In re Norvergence, Inc.*,
   405 B.R. 709 (Bankr. D.N.J. 2009) .....................................................................................11

*In re Palisades at W. Paces Imaging Ctr., LLC*,
   501 B.R. 896 (Bankr. N.D. Ga. 2013) .............................................................................21, 24

*In re Palm Beach Fin. Partners, L.P.*,
   2012 WL 12865225 (Bankr. S.D. Fla. July 3, 2012) ...............................................................11

*In re Pearlman*,
   472 B.R. 115 (Bankr. M.D. Fla. 2012) .................................................................................11

iv

*In re Pers. & Bus. Ins. Agency*,
  334 F.3d 239 (3d Cir. 2003)..................................................12

*In re Petters Co., Inc.*,
  495 B.R. 887 (D. Minn. 2013) ...............................................9

*In re Philip Servs. Corp.*,
  359 B.R. 616 (Bankr. S.D. Tex. 2006) ..................................23

*In re Positive Health Mgmt.*,
  769 F.3d 899 (5th Cir. 2014) ................................................7

*In re Southmark*,
  239 F.3d 365 (5th Cir. Nov. 7, 2000)..............................9, 22

*In re TelexFree, LLC*,
  941 F.3d 576 (1st Cir. 2019)................................................11

*In re Today's Destiny, Inc.*,
  388 B.R. 737 (Bankr. S.D. Tex. 2008) ....................13, 14, 15

*In re Vaughan Co., Realtors*,
  2013 WL 960143 (Bankr. D.N.M. Mar. 11, 2013)..........11, 12, 13, 14

*In re Verestar, Inc.*,
  343 B.R. 444 (Bankr. S.D.N.Y. 2006) ..................................12

*In re Wolf*,
  2016 WL 4940198 (Bankr. W.D. Tex. Sept. 15, 2016)............7

*Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*,
  399 B.R. 352 (Bankr. D. Mass. 2009) ..................................18

*Janvey v. Adams & Reese, LLP*,
  2013 WL 12320921 (N.D. Tex. Sept. 11, 2013)....................11

*Janvey v. Alguirre*,
  2016 WL 11271878 (N.D. Tex. Dec. 21, 2016) ....................10

*Janvey v. Golf Channel*,
  487 S.W.3d 560 (Tex. 2016)...................................................8

*Jurista v. Amerinox Processing, Inc.*,
  492 B.R. 707 (D.N.J. 2013) .................................................11

*Kaliner v. MDC Sys. Corp., LLC*,
  2011 WL 203872 (E.D. Pa. Jan. 20, 2011) ..........................11

*Kipperman v. Onex Corp.*,
   411 B.R. 805 (N.D. Ga. 2009) ............................................................12

*Lewis v. Davis*,
   199 S.W.2d 146 (Tex. 1947).............................................................14

*Lormand v. U.S. Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ............................................................17

*Official Com. of Unsecured Creditors v. Edwards*,
   437 F.3d 1145 (11th Cir. 2006) ........................................................12

*Reneker v. Offill*,
   2012 WL 2158733 (N.D. Tex. June 14, 2012) ...................................13

*Scheidelman v. Henderson (In re Henderson)*,
   423 B.R. 598 (Bankr. N.D.N.Y. 2010) ..............................................16

*Schmidt v. B Asset Manager L.P., et al.*; Adv. No. 17-3324, Dkt. 118 (Bankr. S.D.
   Tex. Jan. 24, 2019).....................................................................7, 15

*Schmidt v. Meridian Capital Found.*,
   2019 WL 3889761 (Bankr. S.D. Tex. Aug. 16, 2019)......................7, 9

*Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*,
   234 B.R. 293 (Bankr. S.D.N.Y. 1999)...........................................9, 17

*Segner v. Ruthven Oil & Gas LLC*,
   2015 WL 5697450 (N.D. Tex. Sept. 24, 2015)....................................7

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
   379 B.R. 5 (Bankr. E.D.N.Y. 2007)........................................17, 19, 20

*SIPC v. Madoff*,
   531 B.R. 439 (Bankr. S.D.N.Y. 2015) ................................................16

*Southmark Corp. v. Schulte, Roth & Zabel, L.L.P.*,
   242 B.R. 330 (N.D. Tex. 1999).....................................................22, 25

*Spring Street Partners-IV, L.P. v. Lam*,
   730 F.3d 427 (5th Cir. 2013) ............................................................10

*Turner v. United States*,
   2013 WL 5877358 (S.D. Tex. Oct. 31, 2013).....................................16

*Wagner v. Levann*,
   2014 WL 12798379 (D.N.M. Jan. 8, 2014) ........................................11

919571.6

*Wiand v Lee (In re Lee)*,
574 B.R. 286 (Bankr. M.D. Fla. 2017) ......................................................................24

**Statutes**

11 U.S.C. § 541 ..............................................................................................11, 12, 13

11 U.S.C. § 544 ....................................................................................................11, 13

11 U.S.C. § 544(a) .......................................................................................................11

11 U.S.C. § 544(b) ................................................................................................11, 12

11 U.S.C. § 547 ..............................................................................................11, 12, 13

11 U.S.C. § 548 ..............................................................................................11, 12, 13

11 U.S.C. § 548(a)(1) .....................................................................................................8

11 U.S.C § 548(c) .......................................................................................................7, 8

11 U.S.C. § 550 .................................................................................................... *passim*

11 U.S.C. § 550(b) ......................................................................................................1, 7

CA Code § 3439 .............................................................................................................7

Tex. Bus & Com. Code § 24.001 ........................................................................ *passim*

Tex. Bus. & Com. Code § 24.009 ...............................................................................8, 9

Tex. Bus. & Com. Code § 24.009(a) ...........................................................................1, 7

**Other Authorities**

Fed. R. Bankr. P. 7005 .................................................................................................26

Fed. R. Civ. P. 8 .....................................................................................16, 17, 20, 24

Fed R. Civ. P. 8(a) ......................................................................................16, 17, 19

Fed. R. Civ. P. 12(g)(2) ...............................................................................................1, 5

Fed. R. Civ. P. 12(h)(2) ..................................................................................................5

Fed R. Civ. P. 12(h)(3) ....................................................................................................5

## SUMMARY OF ARGUMENT

The Rechnitz Defendants filed a first motion to dismiss, and this Court only ordered that Plaintiff clarify two sentences in the former paragraph 215.  Minute Entry, July 24, 2019.  The Rechnitz Defendants now have filed a second motion to dismiss raising arguments that could and should have been raised in their first motion. This Court should deny this second motion as improper under Federal Rule of Civil Procedure 12(g)(2): "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

Further, each of the Rechnitz Defendants' three arguments should be denied because: (1) The Rechnitz Defendants are not "innocent" Ponzi scheme investors, which in the Ponzi scheme context must be pled and proven by defendants as part of the good faith portion of their affirmative defenses under Bankruptcy Code Section 550(b) and the Texas Uniform Fraudulent Transfer Act ("TUFTA") Section 24.009(a); (2) the *in pari delicto* doctrine does not apply to these Bankruptcy Code and TUFTA fraudulent transfer claims, and even if it did, the motion should be denied because this unpled affirmative defense requires discovery and an evidentiary hearing to determine application of the doctrine; and (3) the Trustee adequately has pled tracing, and the small amount of commingling of Black Elk and other Platinum funds does not preclude recovery, but is an issue for expert testimony and trial.

## FACTUAL BACKGROUND

This is a subsequent transferee liability case under the Bankruptcy Code and TUFTA. The Trustee must plead two things: (1) a fraudulent transfer, either actual or constructive, and (2) a tracing of the funds to the Rechnitz Defendants.  Here, the Rechnitz Defendants do not challenge, and in fact agree that there was a fraudulent transfer, arguing a Ponzi scheme. *See*

Dkt. No. 102, at 3 ("operated a Ponzi scheme"), 9 ("The Rechnitzes as Ponzi scheme investors"),

9-13; *see e.g.* FAC, Dkt. No. 85, ¶¶ 11-20, 143-174 (actual fraudulent transfer); *Id.* at ¶¶ 8, 19,

55, 190, 194-95, 197, 201, 204, 219-22, 228 (constructive fraudulent transfer). Instead, the

Rechnitz Defendants challenge the Trustee's tracing pleading.  The Trustee, though, has pled

adequately the Rechnitz Defendants' receipt of Black Elk proceeds.

The Rechnitz Defendants invested $10,000,000 in Platinum Partners Black Elk

Opportunities Fund LLC ("PPBEO"), the onshore version of the Platinum Partners Black Elk

Opportunities ("PPBE") funds for United States citizens, in 2013 to obtain PPBEO equity

interests in Black Elk Series E preferred equity, and in 2014, allegedly exchanged those  PPBEO

equity interests in Black Elk Series E preferred equity for Black Elk senior secured notes.  FAC,

Dkt. No. 85, ¶¶ 91-93, 180, 207-208, 212, 235; Dkt. No. 57, Ex. 2. The Rechnitz Defendants

received two relevant payments from PPBEO, an interest payment on August 25, 2014, in the

amount of $267,149.80, and after deciding to take cash rather than rollover into another Platinum

fund, a $10,000,000 payment on September 3, 2014. FAC, Dkt No. 85, ¶¶ 97, 235, Ex. 5

(PPBEO 5613 account), at SECBLKELK00005 (Bank statement Bates numbering hereinafter

referred to as "BN__") and BN42.[1]

The Rechnitz Defendants' payments of $10,267,149.80 from PPBEO were of Black Elk

proceeds.  FAC, Dkt. No. 85, ¶¶ 97, 230-232.  Black Elk received approximately $126,000,000

in wire transfers relating to the Renaissance Sale on Friday, August 15, 2014.  FAC, Dkt. No. 85,

¶ 165.  After Black Elk received these proceeds, Mark Nordlicht directed, based on the approval

of the majority of the Black Elk Board of Managers, that the Black Elk funds be transferred

---

[1] The Trustee filed both a public version (Dkt. No. 84) and a sealed version (Dkt. No 85) of the
FAC. The exhibits to the FAC are attached to the first-filed public version, Dkt. No. 84.
However, for review of the complete pleading paragraphs, the Trustee refers to the sealed
version in Dkt No. 85.

through Platinum for the benefit of the PPBE Investors:  "the board is in agreement to send …

50 million to ppbe."  *Id*. at ¶ 168 and n.74; *see also Id.,* at ¶ 176 (planned recipients).  The wire

transfers of the Black Elk proceeds then began with the direction to transfer on August 18, 2014,

and ended on August 21, first to the Platinum entities PPVA Black Elk Equity ("PPVA Equity")

($32,563,819.73) and Platinum Partners Value Arbitrage Fund ("PPVAF") ($15,332,672.97),

and then to Platinum Partners Credit Opportunity Master Fund ("PPCO") ($24,600,584.31), and

finally to Platinum Partners Liquid Opportunity Fund ("PPLO") ($5,000,000.00).  FAC, Dkt. No.

85, ¶ 170; Exs. 1-4. These amounts total $77,497,077.01.

At the time the transfers were made from Black Elk to the initial four Platinum entities,

those entities had relatively little money in their accounts, and certainly not the "tens of millions"

asserted by the Rechnitz Defendants. Motion, Dkt. No. 102, at 19-21.[2]  Before the Black Elk

transfers were made to the Platinum entities, PPVA Equity only had $1,580.74, FAC, Ex. 1,

---

[2] The Rechnitz Defendants' references to the August 1, 2014 bank balances ($3,528,143.00 (FAC, Ex. 2, BN27), "almost $16 million" (Ex. 3, BN16), and $5,522,462.99 (Ex. 4, BN22)), Motion, at 20-21, are irrelevant.  The relevant numbers for tracing are the account balances on the day that the Black Elk proceeds hit the accounts. The balances had been substantially depleted by the time that the Black Elk proceeds were received, FAC, Dkt. No.85, Exs. 2, 3 and 4.  Likewise, the total amount of funds deposited between August 1, 2014, and the date of the Black Elk proceeds deposits (the Rechnitz Defendants allege $21,856,159.00 for PPVAF, Ex. 2), also is irrelevant—those prior deposits also had been substantially depleted (there was only $447,401.23 on August 18 in PPVAF before the Black Elk proceeds were deposited, Ex. 2, BN33) by the time of the Black Elk proceeds deposits. Furthermore, the Rechnitz Defendants assert that "more than $7 million" was deposited by Kenney, Daybreak, and Arian.  Motion, at 20.  However, the PPCO account statement (Ex. 3, BN21) shows that these funds were deposited on August 29, 2014, more than a week after the Black Elk proceeds were deposited from PPCO into the PPBEO accounts on August 20, 2014 (Ex. 5, BN3), and there were no additional deposits into the PPBEO accounts on or after August 20, 2014.  FAC, Dkt. No. 85, Ex. 5 (BN3-5, BN42).  Thus, the PPCO August 29 deposits also are irrelevant to the tracing analysis.  Even if there was anywhere near "55 million of funds totally unrelated to the Renaissance Sale," in the Platinum accounts as the Rechnitz Defendants assert, those funds were not in the accounts at the relevant times and so were not commingled with the Black Elk sales proceeds—the number was approximately $3-6 million, depending on the tracing approach adopted by the Court, e.g., the treatment of same day deposits.  Dkt. No. 57, at 20; FAC, Dkt. No. 85, at Exs. 1-4.

919571.6

BN39 (8/19), PPVAF had $447,401.23, Ex. 2, BN33 (8/19), PPCO had $1,773,344.28, Ex. 3, BN19 (8/20), and PPLO had $797,128.90, Ex. 4, BN24 (8/21).   These amounts total $3,019,455.15.

Moreover, none of the PPVA Equity, PPVAF, PPCO, or PPLO entities received any significant funds from any third party other than Black Elk between August 18 and August 21, 2014, before transferring internally and forwarding the Black Elk proceeds to the PPBE entities. FAC, Exs. 1-4 (PPVA Equity had no other deposits on August 19 (Ex. 1, BN39), PPVAF received an unspecified $1.90 transfer on August 20 (Ex. 2, BN33), PPCO received deposits of about $250,000.00 (Kenney was $237,072.48 and Plains was $13,837.03, Ex. 3, BN19) on August 20, but those deposits happened after the PPCO transfer to PPBE on August 20 (Ex. 3, BN19), and PPLO received no other deposits from third-parties on August 21 (Ex. 4, BN24).

After PPVA Equity, PPVAF, PPCO, and PPLO received the Black Elk proceeds, constituting the vast majority of their funds between August 18 and 21, these first four Platinum entities then transferred the Black Elk proceeds among themselves and to PPBEO and PPBEOI. FAC, Dkt. No. 85, ¶¶ 173, 230-232; FAC, Exs. 1-8.   Details of these transfers are set forth in Exhibits 1-8 to the First Amended Complaint, and also were set forth in the Trustee's response to the Rechnitz Defendants' first motion, which is incorporated herein.   *See* Dkt. No. 57, at 20-26.[3] The total amount of funds transferred from Black Elk to the first four Platinum entities, and then from those four entities to the PPBE entities, was almost identical.   FAC, Dkt. No. 85, ¶ 234. The Rechnitz Defendants and the other Defendants were paid with Black Elk funds "that had been improperly transferred from Black Elk…."   *Id*., at ¶ 236.

---

[3] The Trustee has since received the PPBEOI Capital One 4598 statement, and that account had $47,232.44 before Black Elk proceeds were transferred, completing the chart on page 20 of the response to the first motion to dismiss.   Dkt. No. 57, at 20; FAC, Ex. 8.

Before receiving the transfers of the Black Elk proceeds from the Platinum entities, PPBEO and PPBEOI also had virtually no money in their accounts. FAC, Dkt. No. 85, ¶ 233, FAC, Exs. 5-7. For example, PPBEO had $41,585.70 in the 3974 account, FAC, Ex. 6, BN1, and $17.99 in the 5613 account, the account from which the Rechnitz Defendants payments were made. *Id.* Ex. 5, BN3; *Id.* at ¶ 235. These amounts ballooned with the transfers of the Black Elk proceeds, *Id.* at Ex. 5, BN3, BN42, and Ex. 6, BN1, and then dissipated as quickly when the payments were made to the PPBE Investors, including the Rechnitz Defendants. *Id.,* Ex. 5, BN5, BN43, and Ex. 6, BN2. Notably, no deposits were made into the PPBEO 5613 account from which the Rechnitz Defendants were paid after August 21, 2014, and before or on September 3, 2014, when the Rechnitz Defendants received their $10,000,000 payment. *Id.* Ex. 5, BN3-5, BN42-43.

The Trustee has pled adequately the pathways (Black Elk to PPVA Equity, PPVAF, PPCO and PPLO, and then on to PPBEO and PPBEOI), the time frame of August 18-21, 2014, and also the amounts of the various transfers. *See* FAC, Dkt. No. 85, ¶¶ 97, 230-232, Exs. 1-8. That is more than what is required to withstand a Rule 12 motion.

## ARGUMENT

**1.      The Rechnitz Defendants waived their Ponzi scheme "innocent investor," *in pari delicto,* and commingling arguments by not raising them previously.**

In their second motion to dismiss, the Rechnitz Defendants argue that the Trustee may not recover the Rechnitz Defendants' principal investment, that the Trustee's claims are barred by the doctrine of *in pari delicto*, and also a tracing argument that commingling of funds precludes liability, Motion, Dkt. No. 102, at 9-24, all arguments that could have been made in their first motion to dismiss. Federal Rule of Civil Procedure 12(g)(2) states: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make

919571.6

another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Because these arguments were not raised earlier, the Rechnitz Defendants cannot raise them now. *See A.T.N. Indus., Inc. v. Gross*, 4:14-CV-02743, 2016 WL 362309, at \*9 (S.D. Tex. Jan. 29, 2016) ("The Court is of the opinion that Schwartz waived any defense under 12(b)(6) by his failure to allege same in his initial motion to dismiss.").

2.     **The Rechnitz Defendants are not "innocent investors" entitled to retain their principal investment.**

The Rechnitz Defendants assert that they were "innocent investors" in a Ponzi scheme, and therefore the Trustee cannot recover the Rechnitz Defendants' principal investment but instead only the amounts that they received in addition to their principal investment. Motion, Dkt. No. 102, at 9-13. Defendants' argument is incorrect and should be denied for the following reasons:  (1) the argument is an affirmative defense, and Defendants have not pled or proven any defense; in particular, Defendants have not pled or proven that they are "innocent investors" under the Bankruptcy Code Section 550 cause of action, i.e. that they took for value, in good faith and without notice of voidability; Defendants also have not established that they are "innocent investors" under TUFTA, *i.e.*, that they took for reasonably equivalent value and in good faith; and (2) the Trustee's First Amended Complaint ("FAC") does not establish their affirmative defenses as a matter of law, but instead negates the affirmative defenses.

2.1     **The Rechnitz Defendants bear the burden of pleading and proving their affirmative defenses under the Bankruptcy Code and TUFTA, which they have not done.**

The Rechnitz Defendants assert the existence of a Ponzi scheme and their entitlement to retain their principal investment. That argument oversimplifies the applicable law. In Ponzi scheme cases, only "innocent investors" are entitled to retain their principal investments, as

919571.6

recognized by Defendants in their Motion, Dkt No. 102 at 3 ("not recoverable from an innocent victim"); 10 ("innocent investors").

Defendants bear the burden of pleading and proving that they are in fact "an innocent recipient of that transfer." *See, e.g.*, *In re Positive Health Mgmt.*, 769 F.3d 899, 903-04 (5th Cir. 2014) ("a transferee must prove" the elements of Section 548(c)); *see also In re Hanover Corp.*, 310 F.3d 796, 799 (5th Cir. 2002) ("The burden of proof is on the defendant transferee" to establish its affirmative defense under Section 548(c)); *Segner v. Ruthven Oil & Gas LLC*, 2015 WL 5697450, at *2 (N.D. Tex. Sept. 24, 2015) (in Ponzi case, applying Bankruptcy Code Section 548(c) affirmative defense); *Donell v. Kowell*, 533 F.3d 762, 771 & n.4 (9th Cir. 2008) (applying similar California UFTA, and stating that "the 'good faith' defense, [] permits an innocent investor to retain funds up to the amount of the initial outlay"); *In re Maui Indus. Loan & Fin. Co., Inc.*, 2013 WL 2897792, at *6 (D. Hawaii June 13, 2013) ("However, there is a 'good faith' defense that permits an innocent winning investor to retain funds up to the amount of the initial outlay.").

Under the applicable Bankruptcy Code Section 550, the Rechnitz Defendants must plead and prove that they took for value, in good faith, and without knowledge of the voidability of the transfers. 11 U.S.C. § 550(b); *see, e.g.*, *In re Wolf,* 2016 WL 4940198, *36-37 (Bankr. W.D. Tex. Sept. 15, 2016) (finding after trial that defendant "did not meet her burden of proof to establish a defense under § 550(b) to recovery of the Montana 6 property from Rema"); *Schmidt v. Meridian Capital Found.*, No. 19-03330, 2019 WL 3889761, *7 (Bankr. S.D. Tex. Aug. 16, 2019) ("RZH's affirmative defenses under § 550(b) [are] premature at the motion to dismiss stage.").

Under TUFTA Section 24.009(a), the Rechnitz Defendants must plead and prove that they took for reasonably equivalent value and in good faith. Tex. Bus. & Com. Code § 24.009(a);

7

*Janvey v. Golf Channel*, 487 S.W.3d 560, 562 (Tex. 2016) (for TUFTA claims relating to a Ponzi scheme, applying 24.009(a) affirmative defense); *In re FWLL, Inc.*, 2018 WL 1684308, at *18-19 (Bankr. W.D. Tex. April 5, 2018) (finding that Defendant did not establish defense).

This Court addressed an analogous argument in *In re Juliet Homes LP*, in which the Court stated: "a trustee may recover the full amount paid to a Ponzi scheme investor unless the investor can show that it received the payments from the scheme for value and in good faith." 2013 WL 5674398, at *5 (Bankr. S.D. Tex. Oct. 17, 2013) (applying Bankruptcy Code Section 548(c)). The existence of a "Ponzi scheme" is not a separate defense, but instead a way that a transferee can retain its principal if the investor establishes its affirmative defenses. The Rechnitz Defendants have not yet pled, let alone proven, their affirmative defenses under either Bankruptcy Code Section 550 (for value, in good faith and without knowledge of the voidability of the transfer) or TUFTA Section 24.009 (for reasonably equivalent value and in good faith). As such, the Rechnitz Defendants are not entitled to dismissal on those defenses at this stage. *See In re Black Elk Energy Offshore Ops., LLC*, 15-34287, 2019 WL 3889761, at *7 (Bankr. S.D. Tex. Aug. 16, 2019) ("Thus, on the face of the Complaint, the Trustee has adequately plead RZH's liability is liable as a subsequent transferee, rendering RZH's affirmative defenses under § 550(b) premature at the motion to dismiss stage.").

As this Court stated in *Juliet*: "If the transfers were not received in good faith, the transferees are not entitled to retain any of the amounts received by them in furtherance of the scheme." *In re Juliet*, 2013 WL 5674398, at *5; *see also In re M & L Bus. Mach. Co., Inc.*, 198 B.R. 800, 809 n.3 (D. Colo. 1996) ("Since I affirm the bankruptcy court's finding that Ripley did not take in good faith, as measured by an objective standard, § 548(c) does not apply and the Trustee can still recover the amount of $1,307,046.00 under § 548(a)(1)."). In *Juliet,* "[t]he

8

Court ma[de] no determination today as to whether the Movants may, in fact recover up to the amount of their initial investments because, as a threshold matter, there is a genuine dispute of fact as to whether the relevant transfers were received in good faith." *In re Juliet*, 2013 WL 5674398, at *5. The same analysis and holding apply in this case, particularly at the pleading stage.

### 2.2 The Trustee's First Amended Complaint does not establish the Rechnitz Defendants' affirmative defenses as a matter of law.

A complaint can be dismissed as a matter of law on the basis of an affirmative defense only when the complaint establishes the affirmative defense on its face. *Meridian Capital*, 2019 WL 3889761, at *7 (citing *EPCO CARBON Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006)). The Trustee's FAC does not plead facts establishing the Rechnitz Defendants' affirmative defenses under either Bankruptcy Code Section 550 or TUFTA Section 24.009. To the contrary, the Trustee has pled that the Rechnitz Defendants did not take for value, did not take in good faith, and had knowledge of the voidability of the transfers. *See, e.g.*, FAC, Dkt. No. 85, ¶ 236; *In re Petters Co., Inc.*, 495 B.R. 887, 919-920 and n.47 (D. Minn. 2013) ("Where the Trustee has pleaded facts that call into question a defendant's innocence in its past participation in the Ponzi scheme of a debtor-transferor, the potential defense of reasonable equivalence via debt satisfaction is addressed sufficiently and the pleaded claim cannot fail as a matter of law.").[4] This Court, addressing summary judgment, has found a "genuine issue of

---

[4] The Rechnitz Defendants assert in a footnote that the Trustee did not properly plead that the Rechnitz Defendants were on inquiry notice of the Ponzi scheme. Dkt. No. 102, at 10 n.4. Defendants cite no case law or authority for this argument, and it is presumably not a basis for their Motion. However, to the extent that the Rechnitz Defendants pursue this argument in their reply or at oral argument, the Trustee (1) was not required to plead inquiry notice, *Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 318 (Bankr. S.D.N.Y. 1999) ("Whether [defendants] took those monies in good faith and for value are issues to be raised by them as affirmative defenses to the Trustee's recovery, and need not be negated by the Trustee in the Complaint."); (2) the issue is one of fact for trial, *In re Southmark*, 239 F.3d 365, at *6 (5th Cir.

919571.6

fact" in analogous circumstances. *Compare In re Juliet*, 2013 WL 5674398, at *6 (high rate of return, guaranteed rate of return, knowledge that company was operating at a loss and had negative equity, prior checks not paid for insufficient funds); *with* FAC, Dkt. No. 85, ¶¶ 91, 96 (sophisticated and experienced investors), 185-187, 192-193 (above market rates of return and implausibility), 213 and 208-212 (above market rates and implausibility for 2014 exchange of interests), 214 (2014 guaranteed return), 215 (early repayment of capital investment), and 190, 194, 197, 201, 204, 211, 219-220, 228 (public statements relating to insolvency).

**3.      The doctrine of *in pari delicto* does not bar the Trustee's fraudulent transfer claims.**

The Rechnitz Defendants argue that the Trustee's claims are barred by the doctrine of *in pari delicto*. Dkt. No. 102, at 13-19. This argument is flawed for two reasons. First, the doctrine of *in pari delicto* does not apply to the fraudulent transfer claims asserted by the Trustee against the Rechnitz Defendants.  Second, even if the doctrine did apply, *in pari delicto* is an affirmative defense, which the Rechnitz Defendants have the burden of pleading and proving, and the Court should not decide any *in pari delicto* motion without discovery and an evidentiary hearing.

**3.1      The doctrine of *in pari delicto* does not apply to fraudulent transfer claims.**

The only claims asserted by the Trustee against the Rechnitz Defendants are claims to recover fraudulent transfers under the Bankruptcy Code and TUFTA. The Rechnitz Defendants have now moved to dismiss those claims, arguing that they are barred by the doctrine of *in pari delicto*. But that defense is not available to the Rechnitz Defendants. Although the Rechnitz

---

Nov. 7, 2000); and (3) even if the Trustee did have such a burden, the Trustee adequately has pled inquiry notice under the applicable objective standard. *Janvey v. Alguirre*, 2016 WL 11271878, at *4 (N.D. Tex. Dec. 21, 2016) (citing *Hahn v. Love*, 321 S.W.3d 517, 527 (Tex. App-Houston [1st Dist.] 2009, rev. denied)); *GE Capital Commercial, Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 312–13 (5th Cir. 2014); *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 439–40 (5th Cir. 2013)); *see, e.g.*, FAC, Dkt. No. 85, Sections IV.C, IV.E, V.

Defendants argue that the *in pari delicto* doctrine can generally be used against a bankruptcy trustee,[5] Defs.' Mot. 16, none of the cases cited by the Rechnitz Defendants apply the doctrine in the context of a trustee's fraudulent transfer claims.

By contrast, courts consistently have held that the doctrine of *in pari delicto* does not apply to fraudulent transfer claims.[6] *See, e.g.*, *In re TelexFree, LLC*, 941 F.3d 576, 585 (1st Cir.

---

[5] The Trustee further submits that the *in pari delicto* doctrine should not be available to be used against a bankruptcy trustee in any event. *Cf. Janvey v. Adams & Reese, LLP*, 3:12-CV-0495-N, 2013 WL 12320921, at *3 (N.D. Tex. Sept. 11, 2013) ("The Fifth Circuit, when applying Texas law, seems to hold the view that when a receiver is protecting innocent creditors or recovering assets for investors and creditors, the defense of *in pari delicto* should be rejected generally.").

[6] The Trustee has not found a case where the issue was presented and analyzed, and the court then held that *in pari delicto* applies to fraudulent transfer claims; the Trustee did find numerous cases from a variety of jurisdictions where courts refused to apply the doctrine to fraudulent transfer claims. *See, e.g.*, *In re Greater Se. Cmty. Hosp. Corp.*, 333 B.R. 506, 531 (Bankr. D.D.C. 2005) ("fraudulent conveyance actions (at least under § 548) have been held to be immune to the defense of *in pari delicto*"); *In re Norvergence, Inc.*, 405 B.R. 709, 742 (Bankr. D.N.J. 2009) ("Courts have found the In Pari Delicto defense to be inapplicable when a trustee brings an action under §§ 544(a), 544(b) or 548, but applicable to § 541 based actions."); *Kaliner v. MDC Sys. Corp., LLC*, 2:09-MC-00005-JD, 2011 WL 203872, at *5 (E.D. Pa. Jan. 20, 2011) ("While the *in pari delicto* defense applies to actions brought by the trustee as successor to the debtor's interest under § 541, it does not apply to § 544 avoidance actions."); *Wagner v. Levann*, 12-CV-00187-WJ-SMV, 2014 WL 12798379, at *1 (D.N.M. Jan. 8, 2014) ("However, the *in pari delicto* doctrine does not bar actions brought under the trustee's avoidance powers pursuant to 11 U.S.C. §§ 544(b), 547, and 548."); *In re Maui Indus. Loan & Fin. Co.*, 454 B.R. 133, 136 (Bankr. D. Haw. 2011) ("The in pari delicto defense is inapplicable when a trustee brings an action under sections 544(b) and 548."); *In re Pearlman*, 472 B.R. 115, 122–23 (Bankr. M.D. Fla. 2012) ("Even if they are discussed together, avoidance actions by a trustee under §§ 544 and 548 are not barred by the *in pari delicto* defense."); *In re Palm Beach Fin. Partners, L.P.*, 09-36379-BKC-PGH, 2012 WL 12865225, at *12 (Bankr. S.D. Fla. July 3, 2012) ("Moreover, the *in pari delicto* defense cannot be raised against fraudulent transfer claims brought by a bankruptcy trustee pursuant to 11 U.S.C. §§ 544 or 548."); *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 739 (D.N.J. 2013) ("Under *PBI*, the doctrine of *in pari delicto* does not apply to the instant circumstances, and Jurista is not barred from asserting his claims against the Defendants."); *In re Vaughan Co., Realtors*, 11-10-10759 JA, 2013 WL 960143, at *6 (Bankr. D.N.M. Mar. 11, 2013) ("However, the *in pari delicto* doctrine does not bar actions brought under the trustee's avoidance powers pursuant to 11 U.S.C. §§ 544(b), 547, and 548."); *In re Fin. Res. Mortg., Inc.*, 454 B.R. 6, 24 (Bankr. D.N.H. 2011) ("Courts have held that, while the in pari delicto defense applies to actions brought by trustees as the successor to the debtor's interests under § 541, it does not apply to avoidance actions under chapter 5."); *In re Hawaiian Telcom Commc'ns, Inc.*, 483 B.R. 217, 221 (Bankr. D. Haw. 2012) ("While the *in pari delicto*

---

11

2019) ("[W]e hold that *in pari delicto* doctrine does not defeat Darr's standing to bring avoidance actions.") (internal citations omitted); *In re Pers. & Bus. Ins. Agency*, 334 F.3d 239, 245 (3d Cir. 2003) (distinguishing for claims under Section 541 and Section 548 for purposes of *in pari delicto*); *In re Fordu*, 209 B.R. 854, 863 (B.A.P. 6th Cir. 1997), *aff'd*, 201 F.3d 693 (6th Cir. 1999) ("Additionally, courts have consistently recognized that the Trustee may pursue fraudulent or preferential transfers despite the fact that the debtor was a knowing and willing participant to such conveyances."); *In re Verestar, Inc.*, 343 B.R. 444, 480 n.19 (Bankr. S.D.N.Y. 2006) ("It should be noted that *in pari delicto* is not a defense to a fraudulent conveyance suit."); *Kipperman v. Onex Corp.*, 411 B.R. 805, 880 (N.D. Ga. 2009) ("The court finds that the Eleventh Circuit's decisions in *In re Davis*, 785 F.2d 926 (11th Cir.1986) and its dicta in *Edwards*, 437 F.3d 1145, indicate that the Eleventh Circuit would follow the Third and Sixth Circuits and find that *in pari delicto* may not be used against the trustee to bar fraudulent transfer and preference actions  for the following reasons . . . .").

In deciding whether the *in pari delicto* doctrine applies, courts usually distinguish between types of claims. "A bankruptcy trustee typically commences two kinds of actions on behalf of the debtor's estate: (1) actions brought by the trustee as a successor to the debtor's interests under 11 U.S.C. § 541; and (2) actions brought under one of the trustee's avoidance powers, which include actions brought under 11 U.S.C. §§ 544(b), 547, and 548." *In re Vaughan*, 2013 WL 960143, at *5. Under Section 541, the bankruptcy estate includes all claims

---

defense can be raised against a trustee bringing a debtor's pre-bankruptcy claims under 11 U.S.C. § 541, it cannot be raised against avoidance claims."); *Am. Pegasus SPC v. Clear Skies Holding Co., LLC*, 1:13-CV-03035-ELR, 2015 WL 10891937, at *20 (N.D. Ga. Sept. 22, 2015) ("The Court finds that the application of the *in pari delicto* defense is not appropriate in this case; Defendants' motion for summary judgment on this defense is DENIED."); *In re D.I.T., Inc.*, 575 B.R. 534, 536 (Bankr. S. D. Fla. 2017) ("But the *in pari delicto* defense may not be raised in response to an action brought by the estate representative under the provisions of the Bankruptcy Code itself, including fraudulent transfer and preference actions.").

that the debtor could have brought pre-petition. *Id.* Claims that the debtor could have brought pre-petition are potentially subject to the doctrine of *in pari delicto* because the "bankruptcy trustee stands in the shoes of the pre-petition debtor as to those claims" and "he or she is tainted by the debtor's wrongdoing when asserting the claims." *Id.* at *5–6.

By contrast, a trustee's authority under Sections 544, 547, and 548, does not exist independently of a bankruptcy case. In bringing these claims, "the bankruptcy trustee *does not* stand in the shoes of the pre-petition debtor as to those claims" and "the debtors pre-petition wrongdoing does not taint the claims." *Vaughan*, 2013 WL 960143, at *6 (emphasis added).

Here, the only claims asserted by the Trustee against the Rechnitz Defendants are fraudulent transfer claims under Bankruptcy Code Section 550, predicated on Bankruptcy Code Section 548, and TUFTA. The Court should adopt and follow the line of cases holding that the doctrine of *in pari delicto* does not apply to fraudulent transfer claims and deny the Rechnitz Defendants' motion.

> **3.2    Even if the doctrine of *in pari delicto* applied, the Court should still deny the motion to dismiss because it is an unpled affirmative defense and, if pled, would require discovery and an evidentiary hearing and consideration of public policy issues.**

As this Court has noted, the *in pari delicto* doctrine is an affirmative defense for which defendants bear the burden of pleading and proof. *In re Today's Destiny, Inc.*, 388 B.R. 737, 746 (Bankr. S.D. Tex. 2008); *see also Reneker v. Offill*, 3:08-CV-1394-D, 2012 WL 2158733, at *26 (N.D. Tex. June 14, 2012) ("Godwin Pappas bears the burden of proving the affirmative defense of *in pari delicto*."). The Rechnitz Defendants have not yet answered the defense. The Court should not consider their, as yet, unpled affirmative defense.[7]

---

[7] To argue that the Court can decide an *in pari delicto* defense on a Rule 12(b)(6) motion, the Rechnitz Defendants cite *In re Today's Destiny, Inc.*, 388 B.R. 737, 747 (Bankr. S.D. Tex. 2008) and *Fuentes v. Alecio*, No. C-06-425, 2006 WL 3813780, at *3 (S.D. Tex. Dec. 26, 2006). But in

Furthermore, the Court should not rule on a motion asserting *in pari delicto* without discovery and an evidentiary hearing. This Court has observed, "even when parties are *in pari delicto*, 'relief will sometimes be granted if public policy demands it.'" *In re Today's Destiny*, 388 B.R. at 748–49 (quoting *Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947)). The Texas Supreme Court explained the rationale for the *in pari delicto* rule as follows:

> The rule is adopted not for the benefit of either party and not to punish either of them, but for the benefit of the public. . . . There is often involved, in reaching a decision as to granting or withholding relief, the question whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other. The solution of the question depends upon the peculiar facts and equities of the case, and the answer usually given is that which it is thought will better serve public policy.

*Lewis*, 199 S.W.2d at 151.

"The need to consider the 'peculiar facts and equities' is particularly acute when a defendant is asserting the defense against a Trustee who seeks recovery for the benefit of creditors of a wrongdoer rather than the wrongdoer himself." *Today's Destiny*, 388 B.R. at 749. This is especially appropriate for fraudulent transfer claims where the Trustee stands in the shoes of the debtor's creditors. *See In re Vaughan*, 2013 WL 960143, at *6.

---

*Today's Destiny*, this Court, despite finding that the facts supporting in *in pari delicto* were found in the complaint, still denied the defendants' motion to dismiss, and decided to wait on determining *in pari delicto* until discovery and a hearing. At the same time, this Court also held that the defense of *in pari delicto* would not even apply to a contribution claim. *Today's Destiny*, 388 B.R. at 750.

In *Fuentes*, the court dismissed a negligence claim brought by a decedent's family. The plaintiff family alleged that the defendant's negligence led to the decedent's death as he was trying to cross illegally into the United States. 2006 WL 3813780, at *3. There, the court held that Texas bars recovery for injuries sustained while engaged in illegal acts, *id.* at *2, and because the decedent was injured while illegally entering the country, his family could not recover against the defendant. *Id.* at *3. This case, to the contrary, involves only claims to recover fraudulent transfers, but in any event the Court should not rule on *in pari delicto* without discovery and a hearing on the equities and the *Lewis* public policy issue.

"[T]he Court must consider how the facts and equities of the individual case interact with the policy *in pari delicto* was designed to serve." *Today's Destiny*, 388 B.R. at 749. But the Court explained that analysis "cannot be undertaken prior to discovery and an evidentiary hearing." *Id.*

In this case, the equities weigh against the *in pari delicto* doctrine. In asserting fraudulent transfer claims, the Trustee does not stand in the shoes of the pre-petition debtor, but seeks to recover on behalf of the estate for the benefit of its creditors. To apply the doctrine of *in pari delicto* to fraudulent transfer claims under the Bankruptcy Code or TUFTA would be contrary to the purposes of these statutory remedies.

This Court, in its memorandum opinion in the Black Elk-related Beechwood litigation in which common-law pre-petition claims were asserted, denied the Beechwood defendants' argument that the *in pari delicto* doctrine barred the Trustee's claims because the Court concluded that an evidentiary hearing would be warranted to address the public policy issues. The Court reasoned and held:

> In this case, even if the Defendants are correct that alleged misconduct by Black Elk and its officers apply to the fraud the Trustee alleges, that fact alone is not determinative to the application if *in pari delicto*, given the Trustee's unique position as a fiduciary of the entire bankruptcy estate. As with *Today's Destiny*, a further evidentiary hearing would be required to fully determine if the equitable considerations favor applying the doctrine of *in pari delicto*. As a result, Beechwood's argument that *in pari delicto* bars the Trustee's claims as a matter of law is denied.

*Schmidt v. B Asset Manager LP*, et al., Adv. No. 17-3324, Dkt. 118, at 29, (Bankr. S.D. Tex. Jan. 24, 2019) (citations omitted). Even if the Court finds that the *in pari delicto* doctrine could apply in the context of fraudulent transfer claims, there is no reason for the Court to rule differently on the Rechnitz Defendants' 12(b)(6) motion than it did on the Beechwood Defendants' 12(b)(6) motion.  *Id.* at 28–29 ("This Court further held that applying *in pari delicto* at the motion to

dismiss stage would be premature absent an evidentiary hearing which fully establishes the equitable factors involved in a dispute.").

### 4.     The First Amended Complaint adequately pleads tracing.

The Rechnitz Defendants' challenge to the sufficiency of the Complaint's tracing allegations is without merit.  Dkt. No. 102, at 19-24.  As recognized by the Rechnitz Defendants, the Court did not find the tracing allegations of the Trustee's original complaint insufficient after analyzing their first motion challenging tracing, but instead only ordered a clarification of two sentences in (then) paragraph 215 of the original complaint. Motion, Dkt. No. 102, at 5. The Trustee properly pled tracing in the original complaint, and now not only has adequately pled tracing in the FAC, but also has attached the relevant bank account statements containing the information related to tracing.[8]

#### 4.1     Rule 8 notice pleading applies to tracing.

Rule 8(a), notice pleading, governs the tracing allegations.  *See SIPC v. Madoff*, 531 B.R. 439 (Bankr. S.D.N.Y. 2015) ("Rule 8(a) governs the portion of a claim to recover the subsequent transfer."); *In re Bernard L. Madoff Inv. Sec. LLC*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016) (same).  Rule 8(a) simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The purpose of this pleading requirement is to ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 612 (Bankr.

---

[8] The Court should consider the exhibits to the FAC in reviewing the tracing sufficiency of the complaint's allegations.  *See generally Christus Health v. Amisys, LLC*, No. Civ.A.H-05-1045, 2005 WL 2388258, *1 (S.D. Tex. Sept. 26, 2005) ("While a 12(b)(6) motion must be limited to the contents of the pleadings, the Fifth Circuit considers exhibits attached to a complaint to be part of the pleadings."); *Turner v. United States*, No. 4:13-CV-932, 2013 WL 5877358, *3 (S.D. Tex. Oct. 31, 2013) (court may consider documents incorporated in the complaint).  The exhibits not only provide fair notice, but also provide the underlying information from which the tracing analysis can be done.

N.D.N.Y. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] complaint does not need detailed factual allegations but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed). The FAC here is replete with facts, not merely conclusory labels, and clearly rises above the speculative level.

In addition, the Trustee's pleading burden under Rule 8 is typically relaxed because the Trustee is "an outsider to these transactions and will need discovery to identify the specific [subsequent transfers] . . . by date, amount and the manner in which they were effected." *In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 235–36 (Bankr. S.D.N.Y. 2011) (quoting *Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*, 399 B.R. 352, 365 (Bankr. D. Mass. 2009))). Where "the trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases," and "even greater latitude" should be afforded to his or her pleading. *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999).

**4.2    The Trustee must only plead the tracing pathways and time frame.**

To adequately plead tracing in compliance with Rule 8(a), "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from [the debtor] to [the ultimate recipient]." *In re Bernard L. Madoff Inv. Sec. LLC,* No. 10-04398 (BRL) & 10-05219 (BRL), 2012 WL 892514, *2 (Bankr. S.D.N.Y. March 14, 2012). This means alleging "sufficient facts to show, if proved, that the funds at issue originated with the debtor." *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007).

919571.6

The Trustee adequately pleads tracing by giving the time frames and nature of the transfers but does not need to identify each specific transfer by date and amount.  *See Jalbert*, 399 B.R. at 365  ("While Count V does not identify specific payments by amount, date, and manner effected, it does give a time frame and specify the nature of the transfers that Jalbert is seeking to avoid. The Court is confident that the descriptions thus provided will permit the parties, as they proceed with discovery, to distinguish the transactions at issue from those that are not. Jalbert cannot at this stage be required to do more.").

### 4.3     The FAC sufficiently pleads the pathways and timing through which the Black Elk funds were transferred to the Rechnitz Defendants.

The FAC sufficiently alleges the pathways through which the funds were transferred from Black Elk to the Rechnitz Defendants, FAC, Dkt No. 85, ¶¶ 97, 170, 230-234. The FAC identifies (1) specific dollar amounts received from Black Elk and the specific dates received, *Id.* ¶¶ 170, 231-233; FAC, Exs. 1-4; (2) the particular Platinum entity that received the funds, *Id.* ¶¶ 170, 231-233; FAC, Exs. 1-4; (3) the almost simultaneous transfers of those funds among Platinum accounts, *Id.* ¶¶ 170, 231-233, 235 ("quick transfers (basically as fast as the wire transfers could be made) from Black Elk through Platinum to PPBE), FAC, Exs. 1-8; (4) the fact that "[t]he PPBE accounts were almost empty prior to the transfers of the Black Elk proceeds," FAC, Dkt. No. 85, ¶ 233 (including the original balances in PPBEO and PPBEOI accounts); and (5) the email on August 18 confirming that Black Elk proceeds would be used to pay the PPBE Investors, including the Rechnitz Defendants, *Id.* ¶ 189, n.79, ¶ 176, as well as the specific amounts received by the Rechnitz Defendants. *Id.* ¶ 97.  The Trustee also attaches the relevant bank account statements providing the specifics of the transfers from Black Elk to the Rechnitz Defendants.  FAC, Exs. 1-8.

Thus, the Trustee has pled facts showing that the funds at issue originated with Black Elk and identified the pathways those funds took, which facts are confirmed by the bank statements attached to the FAC. Regarding the ultimate transfers to the Rechnitz Defendants, the FAC and its exhibits show:

- The Rechnitz Defendants received payments totaling $10,267,149.80 on August 25, 2014, and September 3, 2014, which payments were comprised of Black Elk proceeds. FAC, Dkt No. 85, ¶ 97; FAC, Ex. 5, BN5, BN42.

- These payments to the Rechnitz Defendants came from the PPBEO account 5613. FAC, Dkt No. 85, ¶ 235; FAC, Ex. 5.

- PPBEO account 5613 had a balance of only $17.99 on August 7, 2019, and received deposits totaling $43,494,940.01 on August 20 and 21, 2014, from Platinum entities through which the Black Elk funds had been internally transferred by Platinum. FAC, Dkt No. 85, ¶ 235; FAC, Ex. 5; Dkt No. 57, at 20-26 (transferring between Platinum accounts); FAC, Exs. 1-8. The Platinum entities only had a total of about $3,000,000 before the initial receipt of the Black Elk proceeds. *See supra,* Factual Background, at 3-5 and n.2.

- Account No. 5613 received no additional deposits before the payments were made to the Rechnitz Defendants. FAC, Ex. 5, BN3-5, BN42. The balance in account 5613 was reduced to $18 following the transfers out to the Rechnitz Defendants and other Defendants. FAC, Dkt No. 85, ¶ 235; FAC, Ex. 5, BN43.

These facts alleged in the FAC go above and beyond the notice requirements of Rule 8(a), provide the Rechnitz Defendants with more than fair notice. and are much more detailed than those the court found sufficient in cases such as *In re Allou Distributors*. There, the Plaintiff alleged the debtor transferred funds to "Controlled Entities" and Eurofactors, who then transferred funds to the defendants to purchase real property and construct condominiums. 379 B.R. at 30. The complaint alleged the transfers by Controlled Entities and Eurofactors to the defendants "were preceded by fraudulent transfers of funds from [the debtor] in amounts sufficient to cover the transfers by the Controlled Entities and Eurofactors." *Id*. The complaint further described "several transfers" from the debtor to Eurofactors and controlled entities and stated the funds were used to purchase a specific piece of property and construct condominiums.

19

*Id.* The complaint further identified the "date and amounts of the transfers from the Controlled Entities to several of the Defendants." *Id.* The court found the pleading sufficiently specific with respect to tracing. *Id.* at 31. Likewise, the Trustee's tracing allegations are more than sufficient to satisfy Rule 8.

### 4.4    The alleged commingling does not defeat tracing.

The Rechnitz Defendants' arguments regarding the alleged impossibility of tracing because of commingling on the basis of the bank statements attached to the FAC is without merit. The Trustee's tracing burden, whether on the pleadings, summary judgment, or trial on the merits "is not so onerous as to require 'dollar-for-dollar accounting' of the 'exact funds' at issue." *Madoff*, 2012 WL 892514, at *3 (quoting *In re Allou Distribs., Inc.*, 379 B.R. at 30); *see also In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 708 (11th Cir. 2005). It follows that "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either." *In re Allou*, 379 B.R. at 30. The Rechnitz Defendants' argument regarding tracing and commingling goes to the merits of the Trustee's claims, discovery, and trial testimony, not to the sufficiency of the pleadings.

Notably, the Rechnitz Defendants do not cite a single case holding that the tracing allegations, which recognize a relatively small amount of commingling, are insufficient at the pleadings stage. Nor can they because —the "mere commingling of the Defendant's property with the proceeds of property fraudulently transferred by the Debtor is not sufficient to defeat tracing." *In re Madoff*, 2012 WL 892514, at *2 (quoting *Dahar v. Jackson (In re Jackson)*, 318 B.R. 5, 25 (Bankr. D.N.H. 2004)). Thus, if commingling cannot defeat recovery on the merits, it certainly cannot defeat a claim at the pleadings stage. *See id.* (denying defendant's motion for summary judgment).

20

A defendant in *In re Madoff* argued that the trustee would be required to prove that "the *only* funding source" for the checking account at issue was from a Madoff account. *In re Madoff*, 2012 WL 892514, at *2. The court rejected the argument as premised on the "untenable assumption that once the Fictitious Profits were comingled with legitimate funds . . . none of the funds can be traced to" the debtor. *Id.* Similarly here, commingling is not a bar to recovery, and certainly not at the pleadings stage. *See id.; Madoff*, 563 B.R. 737, 751-52 (S.D.N.Y. 2017) ("[T]he amounts of the transfers and the appropriate methodology for their calculation are disputed issues for trial."); *In re Palisades at W. Paces Imaging Ctr., LLC*, 501 B.R. 896, 917 (Bankr. N.D. Ga. 2013) ("Commingling funds does not prohibit tracing.").

Moreover, the Rechnitz Defendants' argument regarding "tens of millions of dollars of deposits … unrelated to the Renaissance Sale Proceeds," Motion, at 19, is legally and factually incorrect with respect to tracing. *See supra*, Factual Background, at 3-5 and n.2. The relevant time frame is August 18-21, 2014, not the August 1 through September 2014 time frame from which the Rechnitz Defendants incorrectly cite beginning balances and deposits that had been dissipated before the transfers at issue. *See supra,* Factual Background, at n.2. The bank statements attached to the FAC reflect the following balances in each account at the time Black Elk proceeds hit each of the PPVA Equity, PPVAF, PPCO, and PPLO account, and then the PPBEO and PPBEOI accounts:

| Entity | Bank | Account No. | Balance before transfers | FAC Ex. |
|--------|------|-------------|-------------------------:|---------|
| PPVA Equity | Sterling | 0375 | $1,580.74 | 1, BN39 |
| PPVAF | Sterling | 0148 | $447,401.23 | 2, BN33 |
| PPCO | Capital One | 5051 | $1,773,344.28 | 3, BN19 |
| PPLO | Sterling | 0543 | $797,128.90 | 4, BN24 |
| PPBEO | Capital One | 5613 | $17.99 | 5, BN3 |

| PPBEO | Capital One | 3974 | | $41,585.29 | 6, BN1 |
| PPBEOI | Sterling | 5621 | | $40.00 | 7, BN14 |
| PPBEOI | Capital One | 4598 | | $47,232.44 | 8, at 1/2 |

*See* FAC, Exs. 1-8; Dkt. No. 57, at 20.  The "tens of millions of dollars" that the Rechnitz

Defendants assert in their Motion, at 19-21, either had come in and then gone out before, or were

received after, the Black Elk Renaissance Sales proceeds had washed through the above-listed

accounts, and therefore are irrelevant to the tracing analysis.  *See supra,* Factual Background, at

3, n.2; FAC, Exs. 1-8. The actual number for any alleged commingling, appears to be

approximately $3 million of Platinum funds compared to about $77,500,000 of Black Elk funds.

*See supra*, Factual Background.

Moreover, unlike most cases that require tracing and involve commingling, the intent to

use Black Elk proceeds (rather than Platinum funds) to pay Defendants is clear from Platinum's

correspondence at the time of the transfers, including with respect to the money transferred to the

Rechnitz Defendants, as set forth in the following excerpt from the FAC[9]:

> 167.  **Platinum causes the Renaissance Sale proceeds to be wired to
> and through Platinum for its and the PPBE Investors' improper benefit.** E-
> mail communications on August 18, 2014 by and between Nordlicht, Shulse,
> Small, and Levy demonstrate the mechanics of the final implementation of the
> plan to improperly transfer nearly $98 million from Black Elk for the benefit of
> Platinum. That day, Shulse emailed Nordlicht, with the subject line, "Wire is
> NOT approved," explaining that Shulse understood that Nordlicht was "talking to
> John [Hoffman] at 4:00, [but] the wire transfer deadline is 3:30 ... if you want

---

[9] The court may consider evidence of intent when considering whether a subsequent trustee has
received funds of the debtor.  *See Southmark Corp. v. Schulte, Roth & Zabel, L.L.P.*, 242 B.R.
330, 340 (N.D. Tex. 1999).  The defendant in *Southmark* challenged its status as a subsequent
transferee, asserting the trustee could not establish it received the debtor's funds.  The court on
appeal after trial disagreed, noting "[f]urther, the evidence establishes that [the mediate
transferee] intended to pay [the subsequent transferee's] legal fees out of funds it received from
the [immediate transferee]" and that the "funds could be traced through the relevant banks"
(despite commingling) to identify the defendant as a subsequent transferee.  *Id.*

New Mountain paid today, you are going to have to make a decision soon. I am happy to hit send if the board tells me to, if not it will likely be tomorrow assuming John approves at 4:00."

168.   Five minutes later on August 18, 2014, Nordlicht sent an email to Shulse, copying Small, and Levy, in which Nordlicht represented that "the board is in agreement to send New Mountain wire and 50 million to **ppbe**. ZThe [sic] balance of the preferred I am going to get you john email so u have unanimous consent on top of his verbal agreement that he has already given me … but send these wires out already!!!!!" (emphasis added).[10] At approximately the same time, Daniel Small also emailed Shulse: "Jeff, on behalf of Sam Salfati and myself constituting a majority of the board of managers you are hereby authorized to wire $70 MM in partial payment of Preferred E units. Regards, Dan." Based on Nordlicht's emphatic, five exclamation point email, and Small's confirmatory email, Shulse then authorized and requested the release of the wires "per Mark's [Nordlicht's] direction."

Thus, although the Trustee is not required to do more than provide fair notice, the Trustee's factual allegations, including the bank account statements setting forth the pathways and time frame of the transfers, as well as the specific intent to use the Black Elk proceeds to pay the PPBE Investors, including the Rechnitz Defendants, actually goes far beyond the tracing pleading requirements.

The Rechnitz Defendants fail to cite a single case to suggest that the Trustee's allegations related to tracing and commingling are insufficient at the pleading stage.  Instead, the Rechnitz Defendants cite *In re Advent Management Corp.*, 178 B.R. 480, 491 (9th Cir 1995), *First Federal of Michigan v. Barrow*, 878 F.2d 912 (6th Cir. 1989), *In re Philip Servs. Corp.*, 359 B.R. 616, 627 (Bankr. S.D. Tex. 2006), and *In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 966 (5th Cir. 1980) for the very basic proposition that a party seeking to "establish a trust over commingled

---

[10] As set forth in the FAC, Nordlicht's reference to "ppbe"—the shorthand used by Nordlicht, Huberfeld, Levy, and Manela (among others at Platinum) to refer to PPBEO and PPBEOI—is telling regarding the ultimate intended recipients of the wire transfers. Nordlicht was thinking of the PPBE inside investors, including his father, a Nordlicht family foundation, Huberfeld Foundation, David Levy, Daniel Small, PPVAF and PPCO, as well as other close personal and business associates of Platinum, such as the inside PPBE Investors.  FAC, Dkt No. 85, ¶ 168, n.74.

funds must trace those funds."  Motion at 21.  That is the burden at trial, not pleading, and those cases addressed the constructive trust defense asserted by the transferees on the merits—they did not address a trustee's pleading standard under Rule 8.  Here, the Trustee has met the Rule 8 requirements.

As set forth above, the allegations in the FAC exceed the notice pleading standard set by Rule 8 with respect to tracing.  The Trustee will submit an expert report tracing the Black Elk proceeds to all Defendants in compliance with the Court's docket control order, Dkt. No. 99.  With respect to accounting for the comparatively small amount of Platinum funds (Black Elk proceeds of about $77,500,000 compared to prior Platinum balances of about $3,000,000) that were in the various accounts on the relevant dates, there are a number of different approaches that the Court may employ for tracing under various circumstances, such as "last in, first out," or the "lowest intermediate balance,"[11] There does not appear to be any definitive Fifth Circuit authority on this issue in the context presented here.  The Trustee respectfully requests that, at  a time before expert reports are due, the Court provide guidance on what it believes to be the appropriate standard in this case.

## CONCLUSION

For the reasons set forth herein, the Trustee respectfully requests that the Court deny the motion.  However, to the extent that any deficiency is identified, the Trustee seeks leave to amend.

---

[11] *Madoff*, 563 B.R. at 751-752 (noting the trustee's expert applied five tracing methods, while the defendant's expert replied that only two were appropriate); *Palisades*, 501 B.R. at 917 (listing alternative methods and employing the lowest intermediate balance method); *Wiand v Lee (In re Lee)*; 574 B.R. 286, 295 (Bankr. M.D. Fla. 2017) (approving application of lowest intermediate balance test as "approved by courts in cases requiring the tracing of money through accounts where assets have been commingled" and rejecting "first in first out" and "pro rata distribution" as it would result in a windfall for the defendants).

919571.6

DATED: December 13, 2019.        Respectfully submitted,

By: _/s/ Craig Smyser_
        SMYSER KAPLAN & VESELKA, L.L.P.
        Craig Smyser
        Attorney-in-Charge
        Texas Bar No. 18777575
        Fed. Bar No. 848
        csmyser@skv.com
        717 Texas Avenue, Suite 2800
        Houston, Texas 77002
        713-221-2300
        713-221-2320 (fax)

Of Counsel:

SMYSER KAPLAN & VESELKA, L.L.P.
Jeff Potts
Texas Bar No. 00784781
Fed. Bar No. 16504
Justin Waggoner
Texas Bar No. 24003122
Fed. Bar No. 23098
717 Texas Avenue, Suite 2800
Houston, Texas 77002
713-221-2300
713-221-2320 (fax)
jpotts@skv.com
jwaggoner@skv.com

OKIN ADAMS LLP
Matthew Okin
Texas Bar No. 00784695
Fed. Bar No. 15204
David Curry, Jr.
Texas Bar No. 24065107
Fed. Bar No. 975482
1113 Vine St., Suite 201
Houston, Texas 77002
713-228-4100
888-865-2118
mokin@okinadams.com
dcurry@okinadams.com

**ATTORNEYS FOR TRUSTEE**

919571.6

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on counsel for Defendants in accordance with Rule 7005 of the Federal Rules of Bankruptcy Procedure on the 13th day of December, 2019.

/s/  Jeff Potts
Jeff Potts

919571.6