IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-34287 (MI) |
| | § | |
| BLACK ELK ENERGY OFFSHORE | § | CHAPTER 11 |
| OPERATIONS, LLC | § | |
| Debtor. | § | |
| | § | |
| RICHARD SCHMIDT, LITIGATION TRUSTEE, | § | ADVERSARY NO. 19-03370 |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| BARBARA NORDLICHT AS | § | |
| REPRESENTATIVE OF THE ESTATE OF | § | |
| JULES NORDLICHT, ET AL. | § | |

**DEFENDANTS SHLOMO AND TAMAR RECHNITZ'S REPLY
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Defendants Shlomo and Tamar Rechnitz (the "**Rechnitzes**"), by and through the undersigned counsel, hereby submit their Reply in support of their Motion (the "**Motion**"),[1] pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Richard Schmidt's, as Litigation Trustee's (the "**Trustee**"), Amended Complaint for failure to state a claim upon which relief can be granted, as follows:

**I.**

**THE COURT IS REQUESTED TO TAKE JUDICIAL NOTICE OF
THE MOTION TO DISMISS IN THE GRD ADVERSARY PROCEEDING**

A court may take judicial notice of relevant facts, including uncontested facts from related litigation in the context of a Rule 12(b)(6) motion. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d

---

[1] Capitalized terms not defined herein shall have the meanings as defined and set forth in Docket No. 102, *Defendants Shlomo and Tamar Rechnitz's Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law* (the "**Motion**").

1

333, 338 (5th Cir. 2008); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (when deciding a Rule 12(b)(6) motion to dismiss, a court may consider matters of which it may take judicial notice); *see* FED. R. EVID. 201(f) ("Judicial notice may be taken at any stage of the proceeding."). In the Debtor's bankruptcy case, there is a dispositive motion to dismiss that is presently under advisement in another, similar, adversary proceeding. The Court will recall that there are several other adversary proceedings that were initiated by the Trustee involving substantially similar claims. One such adversary proceeding is Richard Schmidt, Litigation Trustee v. GRD Estates Ltd., Adversary No. 19-03361 (the "**GRD Adversary**").

In the GRD Adversary, there remains under advisement since September 25, 2019, a motion to dismiss filed by GRD (the "**GRD Motion**"), Docket No 21. The gravamen of the GRD Motion is that the GRD Adversary (and all of the other similar adversary proceedings, including this one) are time barred under 11 U.S.C §§108(a) and 546(a). As set forth in the GRD Motion, the Order for Relief was entered on September 1, 2015. Importantly, the statute of limitations on avoiding powers under sections 544, 545, 547, 548, and/or 553 expires on the earlier of the later of either 2 years after the entry of the order for relief, or 1 year after the appointment or election of the trustee. 11 U.S.C § 546(a). To date, the Trustee has not avoided any of the initial transfers that are the subject of this litigation against subsequent transferees.[2]

---

[2] The Trustee obtained a default judgment against two Platinum entities and entered into a Settlement Agreement with the Joint Official Liquidators ("**JOL**") for Platinum Partners Value Arbitrage Fund., L.P., which did three things: (1) it affirmed that the challenged transfers were disputed by the JOL; (2) it expressly denied any wrongdoing or liability; and (3) it reduced the judgment to the sum of $15,332,672.97. *See* Docket 31-1 in the GRD Adversary. Where the settlement with the initial transferee renounces any liability, the Court cannot conclude that the transfer was "actually avoided" for purposes of pursuing any recovery under Section 550. *See In re AVI, Inc.*, 389 B.R. 721, 735 (9th Cir. BAP 2008). Accordingly, the underlying default judgment does not establish an avoided transfer for purposes of Section 546. Indeed, the Complaint herein, filed on March 25, 2019, was long after the "earlier of the later of either 2 years after the entry of the order for relief, or 1 year after the appointment or election of the trustee" and for this reason alone, should be dismissed. These facts will never change.

As argued in the GRD Motion, where the Order for Relief was entered on September 1, 2015, the statute of limitations on the Trustee's claims to avoid these transfers expired on September 1, 2017. This adversary proceeding against the Rechnitzes was not filed until March 25, 2019, more than 18 months after the statute of limitations expired on the claims alleged herein. Accordingly, this adversary proceeding, like the GRD Adversary Proceeding, should be dismissed; and the Court is requested to take judicial notice of the GRD Adversary and the GRD Motion in the case herein.

The hearing on the GRD Motion took place more than a year ago, on September 4, 2019, and the Trustee quickly filed his Amended Complaint in the present action on September 16, 2019, with the understanding that the parties in the GRD Adversary would file supplemental briefing (by GRD on September 18, 2019, Docket No. 33; and by the Trustee on September 25, 2019, Docket No. 34). Although the Rechnitzes anticipated a ruling by the Court on the GRD Motion prior to their response deadline, the GRD Motion remained fully briefed and under advisement at the time the Rechnitzes filed their Motion to Dismiss. Accordingly, this issue was not briefed in duplicate by the Rechnitzes in their Motion to Dismiss.

In early December 2019, before briefing was completed on the Rechnitzes' Motion to Dismiss, the Court and the parties learned that the Trustee and his professionals had allowed the Trust to lapse at the end of its term in July 2019. At that point the Court abated all adversaries, and for the next 11 months or so,[3] the parties engaged in briefing relating to the Trust's lapse and the consequences of that lapse. Regardless of the Trust's lapse, the expiration of the statute of limitations undermines the merits of all of these adversaries and remains a dispositive, gating issue.

---

[3] The Rechnitzes and all of the other Defendants in this adversary and the several other similar adversary proceedings have filed an appeal from that ruling (the "**Appeal**"). The Appeal remains pending at the present time. The grant of the GRD Motion would negate the need for the Appeal.

A ruling on the GRD Motion will inform the future course of action in this adversary proceeding and all of the other similar adversary proceedings. Accordingly, if the Court is not inclined to grant the Rechnitzes' Motion for the other reasons set forth herein and in the moving papers, the Rechnitzes respectfully request that the Court dismiss the adversary proceeding based upon the expiration of the statute of limitations for those reasons set forth in the GRD Motion; or abate this adversary proceeding pending the Court's ruling on the GRD Motion.

II.

### *IN PARI DELICTO* BARS EACH OF THE TRUSTEE'S CLAIMS

The Trustee's Opposition conflates the nature of the claims alleged against the Rechnitzes and erroneously argues that the doctrine of *in pari delicto* does not apply here. However, the cases discussed by the Trustee (set forth in footnote 6 to the Trustee's Opposition) relate to claims pursuant to 11 U.S.C. §§ 547 and 548, generally, and not the Trustee's claims to recover property of the estate pursuant to §541. As discussed in greater detail below, the doctrine of *in pari delicto* applies to actions brought by trustees as the successor to the debtor's interests under 11 U.S.C. § 541. *See In re Hawaiian Telecom Comm. Inc.*, 483 B.R. 217, 221 (Bankr. D. Haw. 2012).

The Trustee's Amended Complaint contains four claims for relief, only two of which are against the Rechnitzes. Counts 1 and 2, which seek to avoid the initial transfers to Platinum, are not alleged against the Rechnitzes, but rather against non-parties to this adversary proceeding. The Trustee admits this in the Amended Complaint, "To be clear, the Trustee has plead this count [Counts 1 and 2] as a predicate for recovery of the transfers to the Defendants under Counts 3 and 4." Am. Compl. ¶245 and ¶250.[4] Indeed, only Counts 3 and 4 are alleged against the Rechnitzes (and the other defendants).

---

[4] The first two counts, seeking to avoid the initial transfers, confirm that the same defects alleged in the GRD Motion exist herein as well: "The Complaint should be dismissed on its face because its attempt to avoid each of the Debtor's

4

The Third Count, which is the predicate for the Fourth Count, is exclusively based upon TUFTA; and the Fourth Count is premised upon 11 U.S.C. §550 and seeks recovery from the Rechnitzes (and others) as subsequent transferees, pursuant to the Trustee's role as successor to the debtor's interests under 11 U.S.C. §541(a)(3), which provides in pertinent part, that property of the estate is comprised of "[a]ny interest in property that the trustee recovers under section 329(b), 363(n), 543, **550,** 553, or 723 of this title." (Emphasis added). Thus, *the Trustee's claims as to the Rechnitzes are as a successor to the debtor pursuant to §541*, **not §547 or §548**, and therein lies the Trustee's problem.

The law is clear that "where the trustee is pursuing a claim that became property of the estate under Section 541 and the debtor engaged in wrongful conduct in connection with that claim, the *in pari delicto* doctrine may shield the defendant from liability." *See Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1275 (10th Cir. 2008) (barring a trustee from pursuing certain claims against third parties that became property of the estate under Section 541 where the debtor engaged in a Ponzi scheme); *see also Sender v. Buchanan (In re Hedged-Investments Assocs.)*, 84 F.3d 1281, 1284 (10th Cir. 1996) (holding that a trustee could not recover from an investor in a Ponzi Scheme perpetrated by the debtor, citing "the elementary principle is that one who has himself participated in violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction").

To the extent that the Trustee must rely on 11 U.S.C. § 541 for his standing in the case to pursue property of the estate pursuant to §550, the Trustee will not be insulated from the wrongdoing of the debtor. Indeed, further proof that the Trustee is pursing putative claims

---

initial transfers is barred by the statute of limitations. The Complaint's request to avoid the initial transfers by the Debtor implicitly concedes that each such transfer has not yet been avoided." *See* GRD Motion at ¶ 14.

"standing in the shoes of the Debtor" is reflected in the Fourth Count (for recovery pursuant to §550) of the Amended Complaint at ¶ 264, which provides in pertinent part that the Trustee "reserves the right to [add] additional claims, *e.g.*, aiding and abetting or conspiracy, against Defendants, depending on the results of discovery of information within the custody and control of Defendants." The doctrine of *in pari delicto* bars each of these claims as well, and this Court should dismiss the Amended Complaint.

As is clear from the Amended Complaint, the Third Count, which is the predicate for the Fourth Count, is exclusively based upon TUFTA. The *in pari delicto* defense is a state law-based equitable defense, thus it is the law of the controlling state—Texas—that dictates its application. *In pari delicto* is a subset of the equitable doctrine of unclean hands, and the application of both of these equitable doctrines rests with the discretion of the Court. *Kuehnert v. Texstar Corporation*, 412 F.2d 700, 704 (5th Cir 1969) (citing *Precision Instrument Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814-15 (1945)). Texas courts have applied the doctrine of unclean hands to prevent recovery under TUFTA. *See, e.g., Jackson Law Office v. Chappell,* 37 S.W.3d 15, 26–27 (Tex.App.-Tyler 2000, pet. denied) (holding the doctrine of unclean hands applied to bar the equitable set-aside of the fraudulent transfers under TUFTA); *Patel v. Kuciemba,* 82 S.W.3d 589, 599 (Tex.App.-Corpus Christi 2002, pet. denied) (applying the unclean hands doctrine to deny equitable relief under TUFTA). Thus, this Court should dismiss the Amended Complaint.

The Trustee is also mistaken as to his assertion that simply because *in pari delicto* is an affirmative defense, that bars this Court from dismissing the Amended Complaint at this stage without discovery or trial. This same argument was brought by the trustees in similar cases before the Tenth Circuit in *Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1275 (10th Cir. 2008), and the Second Circuit in *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v.*

*Coopers & Lybrand, LLP*, 322 F.3d 147, 152 (2d Cir.2003). Both the Tenth and Second Circuits disagreed and found that the court could properly enter summary judgment based on the defense of *in pari delicto* and rejected the argument that an *in pari delicto defense* presents a "quintessential fact question[ ] for the jury" and thus affirmed dismissal on the pleadings. *See also Terlecky v. Hurd (In re Dublin Sec., Inc.)*, 133 F.3d 377, 380 (6th Cir.1997) (on the defendants' motion to dismiss for failure to state a claim, allegations that the debtor intentionally defrauded investors constitutes "purposeful conduct [that] establishes conclusively that the debtors were at least as culpable as the defendants" and therefore supports the *in pari delicto defense* as a matter of law).

### III.

### THE CHALLENGED TRANSFERS ARE REDEMPTION PAYMENTS

The Trustee admits that the challenged payment to the Rechnitzes is a redemption payment. *See* Amended Complaint at ¶97, stating that the Rechnitzes received "a $10,000,000.00 redemption payment from PPBE on September 3, 2014[;]" and Trustee's Opposition at page 2, stating that "[t]he Rechnitz Defendants invested $10,000,000 in Platinum Partners Black Elk Opportunity Fund LLC . . ."). Where there is no dispute that the challenged payment to the Rechnitzes is a redemption payment of their principal investment in Platinum (and Platinum's Ponzi scheme was run for, *inter alia*, the benefit of Black Elk), the balance of the equities as between the Rechnitzes and the Trustee weigh in favor of dismissal of this action. Any "return of principal" that is "up to the amount of the initial investment [is] considered to be exchanged for 'reasonably equivalent value,' and thus not fraudulent" because such a return "proportionally reduce[s] the investors' rights to restitution." *See In re Deepwater Horizon*, 845 F.3d 634, 640–41 (5th Cir. 2017). Accordingly, it would be inequitable for Black Elk to recover monies ahead of the actual victim of Platinum's fraud, where Black Elk received more than $100 million of loaned and

7

invested funds for Black Elk's use and benefit to the detriment of defrauded investors such as the Rechnitzes.

## IV.

### THE TRUSTEE HAS FAILED TO TRACE THE RENAISSANCE SALE PROCEEDS TO THE RECHNITZES

While this Court initially did not find a pleading deficiency related to tracing at the hearing on the Rechnitzes' initial motion to dismiss, the new bank account statements, which clearly show tens of millions of dollars coming into Platinum accounts that are not related to the Renaissance Sale, raises the issue again at this stage. The Trustee's Exhibits to his Amended Complaint show that the several Platinum bank accounts were comingled with Renaissance Sale Proceeds and contained millions of dollars—at the time of payments to the Rechnitzes—clearly having **no relation to the Renaissance Sale Proceeds**, because "[t]hat PPBEOI account was again virtually empty by the end of August, containing $229,975.63." *See* Am. Compl. at ¶ 233. This fact underscores the problem with the Trustee's claims against the Rechnitzes—where the redemption payment to the Rechnitzes was made literally weeks *after* the target Platinum accounts were "virtually empty." Given the opportunity to clarify how it was even possible for the Rechnitzes to receive any portion of the Renaissance Sale Proceeds on September 3, 2014 when the relevant accounts were "virtually empty by the end of August, containing $229,975.63," the Trustee has only attached a myriad of random bank account statements with the implicit directive, "you figure it out." Yet no new allegation corrects the factual predicate that by the end of August, 2014, the subject accounts "were virtually empty." *See* Am. Compl. at ¶ 233.

Instead of providing more specific information regarding the flow of funds tracing the Renaissance Sale Proceeds directly to the Rechnitzes (which is the Trustee's burden at trial), the Trustee has only attached a few bank account statements that show millions of dollars of

commingled funds among several Platinum bank accounts. What these bank account statements also show is that the Platinum entities received millions of dollars of deposits from third parties, **totally unrelated** to the Renaissance Sale Proceeds. "[I]f a party mingles wrongfully obtained funds with its own funds, and disbursements are made from the comingled account, there is a presumption that the disbursements were of the party's own money, not trust [the wrongfully obtained] funds." *See Matter of Kennedy & Cohen, Inc.*, 612 F.2d 963, 966, fn 5 (5th Cir. 1980). This also defeats the Trustee's claims.

      The Trustee's reference to the bank account statements attached to the Amended Complaint is not a substitute for tracing the funds from the Renaissance Sale to the Rechnitzes. Additionally, the Trustee's suggestion that the bank account statements are sufficient "to show the relevant pathways through which the funds were transferred" is fundamentally incorrect. The bank account statements are both a roadblock to any pathway and plainly undermine the Trustee's argument because they reflect rampant commingling. The law is clear that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). Plaintiff must provide "more than labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the rules "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678. Here, where the allegations in the Amended Complaint and the bank account statements both directly contradict the Trustee's allegations, it simply is not plausible that the Rechnitzes received the Renaissance Sale Proceeds.

75670121.2

## V.

## CONCLUSION

Based on the foregoing, this Court should dismiss the Trustee's Amended Complaint against the Rechnitzes for failure to state a claim under Rule 12(b)(6), with prejudice and without leave to re-plead, because it is clear from the face of the Amended Complaint that no viable claim can be asserted as a matter of law.

### Reservation of Rights and Statement of Consent

Because the issues presented in this Motion to Dismiss are gating issues to the Trustee proceeding with his claim against the Rechnitzes, and which the Rechnitzes believe is dispositive of the adversary proceeding for those reasons set forth herein, the Rechnitzes reserve their rights to answer, move, object, or otherwise respond to the Amended Complaint and assert any available rights, claims, and/or defenses if the Motion is not granted. The Rechnitzes consent to entry of final orders or judgment by the bankruptcy court in this adversary proceeding.

Dated: December 4, 2020               Respectfully submitted,

**POLSINELLI**

By: */s/ Liz Boydston*
Liz Boydston (SNB 24053684)
1000 Louisiana Street, Suite 6400
       Houston, Texas 77002
713.374.1667 (telephone)
713.374.1601 (fax)
lboydston@polsinelli.com

*and*

**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**

Beth Ann R. Young (*admitted pro hac vice*)

10

75670121.2

10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Email: bry@lnbyb.com

**COUNSEL FOR DEFENDANTS
SHLOMO AND TAMAR RECHNITZ**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and served through the CM-ECF system to all counsel of record registered to receive a Notice of Electronic Filing for this case on the 4th day of December 2020.

By: */s/ Liz Boydston*